960 So.2d 1057 (2007)
Joseph D. WEEKLY & Pallet Reefer International, L.L.C.
v.
LWCC (Louisiana Worker's Compensation Corporation).
No. 2006 CA 1249.
Court of Appeal of Louisiana, First Circuit.
May 4, 2007.
*1058 Gregory J. Schwab, Houma, for Plaintiffs-Appellees Joseph D. Weekly and Pallet Reefer International, L.L.C.
Gregory E. Bodin, Deborah E. Lamb, Baton Rouge, for Defendant-Appellant Louisiana Workers' Compensation Corp.
Before: KUHN, GAIDRY, and WELCH, JJ.
WELCH, J.
In this workers' compensation dispute, the defendant, Louisiana Workers' Compensation Corporation ("LWCC"), appeals a judgment rendered in favor of the plaintiffs, Joseph D. Weekly and Pallet Reefer International, L.L.C. ("Pallet Reefer"), Mr. Weekly's former employer. Finding that the workers' compensation judge ("WCJ") manifestly erred in determining that Mr. Weekly had sustained a work-related accident, we reverse the judgment.

I. FACTUAL AND PROCEDURAL HISTORY
On June 4, 2001, Mr. Weekly, a resident of Tennessee, was hired by Pallet Reefer in Houma, Louisiana, as an outside sales representative to sell cold storage units in a multi-state territory. On September 5, 2001, Mr. Weekly began experiencing back and leg pain while on a business trip in Mississippi. At the time, Mr. Weekly did not seek any medical treatment for his condition. LWCC had issued a policy of insurance providing for workers' compensation coverage to Pallet Reefer, which was in effect on September 5, 2001.
Several weeks later, in November 2001, Mr. Weekly went on a business trip to Atlanta, Georgia. One morning during this trip, Mr. Weekly woke up in his hotel room with severe pain in his back and legs that rendered him unable to stand or get out of bed. Mr. Weekly contacted Louis Saia, the sole owner of Pallet Reefer, concerning his back and leg pain and, upon returning home to Tennessee, sought medical treatment for his condition. Mr. Weekly was ultimately diagnosed by Dr. Maurice M. Smith, a neurological surgeon, with degenerative disc disease and a herniated disc at the L5-S1 level.
Mr. Weekly's employment with Pallet Reefer ended on January 31, 2002, and on February 1, 2002, Mr. Weekly commenced working for Employee's Express, Inc. ("Employee's Express"). Employee's Express is also wholly owned by Mr. Saia. Employee's Express was self-insured and did not have a policy of insurance providing for workers' compensation coverage to its employees through LWCC nor were its employees covered under Pallet Reefer's policy of insurance with LWCC.
In June 2002, Pallet Reefer reported the September 5, 2001 incident to LWCC. In July 2002, LWCC sent a letter to Mr. Saia indicating that it would not cover Mr. Weekly's claim for workers' compensation benefits on the basis that Mr. Weekly was not a Louisiana resident, and therefore, was not eligible for workers' compensation benefits under Louisiana law. Thereafter, in October 2002, LWCC retracted its previous position and instead, denied Mr. Weekly's claim on the basis that his condition was not caused by a work-related "accident" as defined in the Louisiana Workers' Compensation Act (La. R.S. 23:1021).
In December 2002, Dr. Smith performed a right-sided L5-S1 hemilaminotomy, medial facetectomy, and diskectomy through a *1059 tubular retractor on Mr. Weekly. Employee's Express, which has a self-insured health plan, paid all of Mr. Weekly's medical expenses associated with his back condition and it also paid wages to Mr. Weekly during the time he was not working due to medical appointments and the surgical procedure.[1]
On December 13, 2002, Mr. Weekly, with the help of Mr. Saia, filed a disputed claim for compensation with the Office of Workers' Compensation alleging that "[o]n September 5, 2001, [he] injured [his] back driving in Mississippi" and described the accident as his "[b]ack began hurting while getting in and out of car on sales trip in Mississippi." LWCC answered the claim asserting that there was no accident or occupational injury on September 5, 2001, and that Mr. Weekly's back condition could not be considered an occupational disease. LWCC further contended that if an accident had occurred on September 5, 2001, the disputed claim for compensation was filed more than a year after the alleged accident, and therefore, the claim was prescribed. Pallet Reefer intervened in the suit, alleging that it had paid "compensation" and "medical bills" to Mr. Weekly as a result of his claimed injuries, and therefore, was subrogated to the rights of Mr. Weekly against LWCC to the extent of those payments. At trial, Mr. Saia, on behalf of Pallet Reefer and Employee's Express, waived any conflict of interest, and stated that he was seeking to recover only from LWCCnot from Mr. Weekly.
After a trial on the merits, the WCJ found that Mr. Weekly had sustained his burden of proving that a work-related accident occurred on September 5, 2001, which caused a back injury; that although Mr. Weekly's disputed claim for compensation was prescribed on its face, Mr. Saia's actions (through Employee's Express) in paying Mr. Weekly's wages (in lieu of workers' compensation) and medical expenses, as well as the inaction and tardiness of LWCC, "lulled" Mr. Weekly into a false sense of security which caused him to delay filing his workers' compensation claim until December 2002, and therefore, the one-year prescriptive period was interrupted and Mr. Weekly's claim was timely filed; that LWCC had no reasonable basis for denying or discontinuing the payment of medical benefits, and therefore, awarded Mr. Weekly a penalty of $2,000 and attorney fees in the amount of $15,000. A written judgment in conformity with the WCJ's rulings was signed on March 9, 2006,[2] and this judgment further awarded reimbursement to Pallet Reefer for medical expenses paid to Mr. Weekly in the amount of $27,482.68 and reimbursement to Pallet Reefer for wages it paid to Mr. Weekly in the amount of $3,422.80,[3] and assessed costs against LWCC. It is from this judgment that LWCC has appealed.

II. ASSIGNMENTS OF ERROR
On appeal, LWCC asserts that: (1) the WCJ erred in finding that Mr. Weekly sustained a compensable, work-related "accident," as that term is defined in La. R.S. *1060 23:1021, and in particular, erred in finding that Mr. Weekly injured himself while unloading his vehicle on September 5, 2001; (2) the WCJ erred in finding that the actions and inactions of Pallet Reefer and LWCC interrupted prescription; (3) the WCJ erred in finding that Pallet Reefer was entitled to be reimbursed by LWCC for medical expenses incurred by Mr. Weekly in the amount of $27,482.68; (4) the WCJ erred in finding that Pallet Reefer was entitled to be reimbursed by LWCC for wages paid to Mr. Weekly in the amount of $3,422.80; (5) the WCJ erred in awarding Pallet Reefer and Mr. Weekly the sum of $2,000 in penalties and $15,000 in attorney fees; and (6) the WCJ abused its discretion in assessing costs against LWCC.

III. STANDARD OF REVIEW
In a workers' compensation case, whether a claimant has carried his burden of proof is a question of fact to be determined by the WCJ. Authement v. Wal-Mart, 2002-2434, p. 6 (La.App. 1st Cir.9/26/03), 857 So.2d 564, 570. Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of review. Id. As such, in order for an appellate court to reverse a WCJ's factual findings, it must find from the record that a reasonable factual basis does not exist for the findings of the WCJ, and that the record establishes that the findings are clearly wrong (manifestly erroneous). Id.; see also Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).

IV. WORK-RELATED ACCIDENT
The Workers' Compensation Act ("the Act") provides coverage to an employee for personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A). An employee must prove the chain of causation required by the workers' compensation statutory scheme as adopted by the legislature. Harrison v. Baldwin Motors, 2003-2682, p. 3 (La.App. 1st Cir.11/3/04), 889 So.2d 313, 316, writ denied, XXXX-XXXX (La.4/1/05), 897 So.2d 609. He must establish that the accident was work-related, the accident caused the injury, and the injury caused the disability. Id.
Initially, a workers' compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. Harrison, 2003-2682 at p. 4, 889 So.2d at 316. "Accident" is defined in the Act as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1).
Louisiana courts have consistently interpreted the work-related accident requirement liberally. Authement, 2002-2434 at p. 7, 857 So.2d at 571 (citing Bruno v. Harbert International, Inc., 593 So.2d 357, 360 (La.1992)). However, despite the liberal construction afforded the employee in a workers' compensation action, the employee's burden of proof is not relaxed. Hall v. J.E. Merit Constructors, Inc., 2002-2648, p. 6 (La.App. 1st Cir.11/7/03), 861 So.2d 224, 228. The employee is still required to identify the event marking the time when one can identify an injury. Id.
A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Bruno, 593 So.2d at 361. Corroboration of the worker's testimony may be provided by the testimony of co-workers, spouses, *1061 friends, or by medical evidence. Id. Barring circumstances that cast suspicion on the reliability of the worker's uncontradicted testimony, the WCJ should accept the testimony as true when determining whether the worker has discharged his burden. Harrison, 2003-2682 at p. 4, 889 So.2d at 316. However, if the evidence leaves the probabilities of causation equally balanced, the worker has failed to carry his or her burden of proof. Likewise, the plaintiffs case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. Id.
LWCC contends that the WCJ erred in finding that Mr. Weekly met his burden of proving that he sustained a work-related accident, within the meaning of La. R.S. 23:1021(1), that caused his back condition, so as to warrant the award of workers' compensation and medical indemnity benefits.
According to the deposition testimony of Dr. Smith, Mr. Weekly's treating physician, Mr. Weekly presented on May 7, 2002,[4] with back pain, right-sided leg pain, and pain down the superior aspect of his right buttock. Mr. Weekly told Dr. Smith that he could only walk approximately 200 yards before the pain increased down his right leg. An MRI of Mr. Weekly's lumbar spine performed on March 21, 2002, showed degenerative disc disease and a herniated disc at L5-S1, with slight anterior listhesis of L5 and S1. Dr. Smith explained that Mr. Weekly's degenerative disc disease would not have caused the symptoms of which he was complaining, but that the disc herniation would have caused such symptoms. Dr. Smith also noted that Mr. Weekly had a disc space collapse at the L5-S1 level, which was more a symptom of his degenerative disc disease. Dr. Smith stated that while degenerative disc disease is not typically associated with an on the job injury, disc herniation can be and is easier to relate to a specific event (such as on the job injury) than to degenerative disc disease. Dr. Smith further explained that disc herniation can develop instantaneously, that typically it is not a condition that develops slowly over time, and that "just about anything" can be associated with causing a disc herniation. However, Dr. Smith stated that Mr. Weekly did not discuss with him or relate to him any sort of occurrence or specific event that may have caused his disc herniation. Dr. Smith indicated that Mr. Weekly's reported work-related activities on the date of September 5, 2001, may or may not have caused Mr. Weekly's back condition. Dr. Smith opined that based on his files and the history given to him by Mr. Weekly, there was no evidence of a sudden trauma.
According to Mr. Weekly, during the Mississippi road trip, there was no specific accident, trauma, or incident that happened to him or that caused his back to start hurting. He stated that during the September 5, 2001 business trip in Mississippi, he "started feeling" back pain when he was getting in and out of his car and unloading his files and laptop computer. However, he admitted that he did not "know that [he] did anything or that anything out of the ordinary happened" to cause his back pain, that getting in and out of the car and unloading his files and laptop computer were not necessarily what caused his back to hurt, and that something else could have caused his back to hurt. Mr. Weekly testified that several weeks later, while in Atlanta on a business *1062 trip, he went to his hotel room, unloaded his "stuff," and went to bed. The next morning when he tried to get out of bed, he could not move and had pain all the way down to the heel on his right leg. Mr. Weekly stated that he immediately called Mr. Saia, returned home, and sought medical treatment for his back pain and leg pain.
Mr. Saia testified that Mr. Weekly had called him while he was on the Mississippi trip "complaining about pain." However, Mr. Saia did not recall talking with or hearing about pain from Mr. Weekly again until a month or two later, when Mr. Weekly called him from Atlanta in "extreme pain" telling him he could not walk.
Based on our review of the record, we find there was no reasonable basis for the WCJ's determination that Mr. Weekly met his burden of proving by a preponderance of the evidence that he sustained a compensable work-related accident, as defined by La. R.S. 23:1021, on September 5, 2001. Although Mr. Weekly's pain may have begun while he was working, he was unable to identify a single, precipitous event that directly and proximately caused his back condition as required by La. R.S. 23:1021. Mr. Weekly specifically stated that he did not do anything out of the ordinary to injure his back, and he never testified that his injury was related to an accident or a single event. Furthermore, Mr. Weekly never related to his treating physician, Dr. Smith, any specific event that caused his herniated disc, and in Dr. Smith's opinion, there was no evidence that Mr. Weekly's condition was induced by sudden trauma. As such, we find Mr. Weekly failed to satisfy his burden of proving a compensable "accident" under La. R.S. 23:1021, and the WCJ was clearly wrong in determining otherwise.
In reaching this conclusion, it follows that Mr. Weekly was not entitled to workers' compensation benefits, and therefore, the WCJ erred in awarding reimbursement to Pallet Reefer for medical expenses and wages paid to or on behalf of Mr. Weekly and in awarding Mr. Weekly penalties, attorney fees, and costs.[5] Accordingly, the March 9, 2006 judgment of the WCJ is hereby reversed.

V. CONCLUSION
For the above and foregoing reasons, we find that the WCJ's factual determination that Mr. Weekly was injured as the result of an accident while in the course of and arising out of his employment with Pallet Reefer was manifestly erroneous. As such, Mr. Weekly was not entitled to workers' compensation benefits. Therefore, the March 9, 2006 judgment is hereby reversed.
All costs of this appeal are assessed to the intervenor/appellee, Pallet Reefer International, L.L.C.
REVERSED.
GAIDRY, J., concurs.
NOTES
[1] Mr. Saia, as the owner of both Employee's Express and Pallet Reefer, explained that the payment of Mr. Weekly's medical expenses and wages were reflected on the corporate "books" as a "receivable for Employee[']s Express" and as a "payableas money owedfor Pallet Reefer."
[2] The original judgment in this matter was signed on February 8, 2006. However, due to an error in the calculation of the indemnity benefits, an amended judgment was signed on March 9, 2006. See La. C.C.P. art. 1951.
[3] The actual wages paid to Mr. Weekly totaled approximately $7,777.76; however, the reimbursement was limited to the maximum compensation rate of $398 per week for 8.6 weeks (or $3,422.80).
[4] Mr. Weekly had previously sought treatment on March 4, 2002, with Dr. Samuel E. Murrell, III, an orthopedic surgeon. After an epidural steroid injection was unsuccessful in relieving Mr. Weekly's pain, Dr. Murrell recommended surgery. Mr. Weekly then sought medical treatment with Dr. Smith.
[5] Given our conclusion that Mr. Weekly failed to satisfy his burden of proving a compensable work-related "accident" under La. R.S. 23:1021, we pretermit discussion of the appellant's second assignment of errorthat the WCJ erred in finding that the actions and inactions of Pallet Reefer and LWCC interrupted prescription in this matter.