# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 21-762


HENRY SIMPSON

VERSUS

CEDRIC P. GASPARD, CPG, INC., FEDEX WAREHOUSE
AND LUBA CASUALTY INSURANCE COMPANY

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF LAFAYETTE, DOCKET NO. 20-00850
HONORABLE PAULA MURPHY, ADMINISTRATIVE LAW JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*
## SYLVIA R. COOKS
## CHIEF JUDGE
\*\*\*\*\*\*\*\*\*\*\*\*


Court composed of Sylvia R. Cooks, Chief Judge, Billy Howard Ezell, and D. Kent
Savoie, Judges.


**AFFIRMED.**

Mark L. Riley
The Glenn Armentor Law Corporation
300 Stewart Street
Lafayette, LA  70501
(337) 233-1471
COUNSEL FOR PLAINTIFF/APPELLEE:
        Henry Simpson

Eric J. Waltner
Allen & Gooch, A Law Corporation
2000 Kaliste Saloom Rd., Suite 400
Lafayette, LA 70508
P.O. Box 81129
Lafayette, La  70598-1129
(337) 291-1400
COUNSEL FOR DEFENDANTS/APPELLANTS:
        CPG Inc. and LUBA Workers' Compensation

**COOKS, Chief Judge.**

Claimant, Henry Simmons, was employed by CPG, Inc., a FedEx contractor, as a box truck driver. Claimant alleged on October 2, 2019, he was in his delivery truck sorting packages, when he injured himself while lifting a heavy package off the floor to place it on a top shelf. Claimant reported the incident that day to his manager at CPG, Aaron Resignola. At some point, Cedric Gaspard, the president of CPG, questioned Claimant about the incident. Claimant's account of the incident was consistent with what he told Mr. Resignola.

The same evening of the incident, Claimant was treated at AHS Walk-In Clinic. The records from that visit reflect that Claimant complained that he hurt his back lifting a box at work and was experiencing pain on the right side of his back and right shoulder. It was determined he had midline tenderness over the thoracic spine and tenderness in the right thoracic paravertebral muscles. X-rays of his shoulder and thoracic spine showed no abnormalities. Claimant was diagnosed with Dorsalgia and restricted to light-duty work with a weight-lifting limitation of fifteen pounds.

Claimant returned to work on October 4, 2019. He maintained he suffered a second workplace injury on December 4, 2019, while attempting to deliver a package. Claimant stated while attempting to lift the package up, he felt his lower back and legs give out and he fell down stairs. Claimant reported the accident to Mr. Resignola and Mr. Gaspard. Claimant maintained that Mr. Gaspard told him he had suffered a similar injury before and that Claimant was "going to be alright." Claimant stated he told Mr. Gaspard he would try to continue working through the busy season of Christmas, but then would "have to see what is going on with me." CPG personnel denied hearing about any second accident from Claimant.

On December 25, 2019, Claimant was terminated from his employment by CPG. Mr. Gaspard testified at trial that the termination occurred because he was

2

having problems with Claimant. He also acknowledged he continued to allow Claimant to work through Christmas "because Christmas is our busiest time of the season, and I wanted to get through Christmas then let him go after Christmas."

On February 5, 2020, a workers' compensation claim was filed against FEDEX-Warehouse, Cedric P. Gaspard, CPG, Inc., and LUBA Workers' Compensation. It alleged on December 4, 2019, Claimant was lifting heavy items at work and injured his back. Claimant also alleged indemnity benefits were not paid and medical treatment was not authorized by the defendants. Claimant sought all benefits due as well as penalties and attorney fees. On April 6, 2020, a First Amended Disputed Claim for Compensation was filed amending the date of the work-place accident to October 2, 2019.

Defendants answered, disputing all claims except the employment relationship. Defendants later filed an Amended and Supplemental Answer alleging that Claimant violated La.R.S. 23:1208, by misrepresenting information on his post-hire medical questionnaire form.

Trial was held on April 15, 2021, and post-trial briefs were ordered and submitted. At trial, the parties stipulated to the following: (1) the average weekly wage was $635.57, which corresponded to a weekly temporary, total disability rate of $423.71; (2) Claimant was an employee of CPG between July 15, 2019 and December 15, 2019; and (3) LUBA provided workers' compensation insurance coverage to CPG during the period relevant to the claim. Additionally, the parties entered into a Consent Judgment prior to trial that all claimed compensation benefits for the period between October 19, 2020 and November 4, 2020 were forfeited for Claimant's failure to attend a scheduled second medical opinion appointment.

On June 11, 2021, judgment was issued by the Office of Workers' Compensation (OWC) finding Claimant proved accidents with injury occurred during the course and scope of his employment on October 2, 2019 and December

3

4, 2019. The OWC found Claimant was entitled to indemnity benefits from January 21, 2020 forward at the rate of $423.71 weekly, payment of all medical bills incurred as a result of the accident and ongoing necessary medical treatment. The OWC also assessed penalties of $8,000, attorney fees of $10,000 and all costs against Defendants. The OWC also found Claimant did not violate La.R.S. 23:1208.

This appeal followed. Defendants assert it was error for the OWC to find (1) Claimant proved an accident occurred on December 4, 2019; (2) that Claimant proved an injury occurred as a result of the October 2, 2019 accident; (3) the medical bills were to be paid without reference to the fee schedule; and (4) in awarding penalties and attorney fees to Claimant.

## ANALYSIS

An employee is entitled to workers' compensation benefits if he receives a personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031; *McLin v. Indus. Specialty Contractors, Inc.*, 02-1539 (La. 7/2/03), 851 So.2d 1135. In a workers' compensation case, the appropriate standard of review to be applied by the appellate court to the OWC's finding of fact is the manifest error or clearly wrong standard. *Dean v. Southmark Const.*, 03-1051 (La. 7/6/04), 879 So.2d 112. "Whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the [OWC]." *Hebert v. C.G. Logan Constr., Inc.*, 06-612, p. 2 (La.App. 3 Cir. 11/2/06), 942 So.2d 77, 79. Unless shown to be clearly wrong, the OWC's factual findings of a work-related disability will not be disturbed where there is evidence which, upon the trier of fact's reasonable evaluation of credibility, furnishes a reasonable, factual basis for those findings. *Id.* When a fact finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and

reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Id.* The trier of fact's determinations as to whether the worker's testimony is credible and whether the worker discharged the burden of proof are factual determinations, not to be disturbed upon review unless clearly wrong. *Smith v. Cappaert Manufactured Hous., Inc.*, 11-1464 (La.App. 3 Cir. 4/10/12), 89 So.3d 1234, *writ denied*, 12-1418 (La. 10/2/12), 98 So.3d 857.

In his first two assignments of error, Defendants contend the OWC erred in finding Claimant proved an accident occurred on December 4, 2019 and that there was an ongoing injury that affected Claimant as a result of the October 2, 2019 accident. Although Defendants have separate assignments of error on both the October 2, 2019 and December 4, 2019 accidents, the two accidents cannot be addressed standing alone and by their nature are intertwined. The primary basis for Defendants' argument on both hinges on the assertion that Claimant's testimony is not credible and implausible. The OWC disagreed and stated in its written reasons for judgment that it was making "a specific finding that [Claimant's] testimony was credible."

We initially note, as opposed to the October 2, 2019 accident, where all parties acknowledge Claimant reported the incident and was sent by Mr. Gaspard to receive medical treatment, the parties disagree as to whether Claimant informed anyone of a December 4, 2019 accident. Claimant maintained he reported the accident to Mr. Resignola and Mr. Gaspard, and was told by Mr. Gaspard he had suffered a similar injury before and that Claimant was "going to be alright." Claimant further maintained he told Mr. Gaspard he would try to continue working through the busy season of Christmas, but then would "have to see what is going on with me." Defendants refute that Claimant reported any such incident, and assert they were not aware of this accident until the claim was filed.

5

As there was conflicting evidence of the occurrence of this accident, the OWC was required to weigh the evidence and make credibility determinations. Plaintiffs note, in addition to their argument that Claimant made up the December 4, 2019 accident, Defendants also took the position at trial that Claimant never suffered any continuing injury from the October 2, 2019 accident and the fact Claimant came back to work after the accident and continued to work until he was fired on Christmas Day 2019 undermines this claim. Mr. Simpson addressed this at trial during his testimony. He testified he needed to go back to work because he had a family to provide for and child support to pay. He also stated during this time period he received help from Mr. Resignola to complete his routes, as he had difficulty caused by the pain he was suffering. Mr. Resignola acknowledged he regularly helped Claimant complete his routes during this period.

Moreover, the medical records and testimony established Claimant was sent to AHS Walk-in Clinic complaining of back and shoulder pain and was placed on a light-duty work restriction. He then underwent several months of chiropractic procedures from David Barcyzk and was treated for lower back and leg pain by Dr. Michel Heard, an orthopedist. Both Mr. Barcyzk and Dr. Heard related Claimant's ongoing injury to his work-related accident. Further, Dr. Heard specifically determined Claimant was "unable to work in any capacity." Dr. Heard, in her March 21, 2021 report, specifically found the "patient's work status is unchanged. The patient has not reached MMI." The OWC also noted that according to the medical records, Claimant passed a Department of Transportation physical the day before the October 2, 2019 accident, indicating he was able to perform his job with no restrictions. The medical records show this changed the following day when Claimant suffered the work injury and was restricted to light-duty work.

The OWC also found the report of Defendants' choice of physician, Dr. John Budden, was of little weight. Dr. Budden stated in his report he did not causally

relate Claimant's back and leg symptoms to the accident. The OWC noted that Dr. Budden's report relied on the belief that Claimant's first documented complaints of lower back pain did not occur until he began treating with the chiropractor in January of 2020. Dr. Budden stated it was his "opinion that if the patient had been experiencing any lower back or leg complaints from the work incident in October 2019, I would have expected a relatively prompt presentation of leg or lower back symptoms prior to January 2020." The OWC noted, however, that the medical records from AHS Walk-in Clinic specifically referenced complaints from Claimant of lower back pain. The OWC concluded "[i]n light of this error, the court gives little weight to the impressions of Dr. Budden herein."

The OWC also reviewed the report of Dr. Clark Gunderson, who performed an independent medical examination of Claimant on March 4, 2021. Dr. Gunderson took issue with Claimant's inconsistencies with the dates of the accidents he listed on several of the medical forms. This was an inconsistency argued by Defendants both below and now on appeal. They note Claimant did not initially report the October 2, 2019 accident on the medical forms he filled out at the chiropractor and with Dr. Heard. Claimant testified he did not specify the October 2, 2019 accident on those forms because he was under the impression he only had to provide the most recent date of injury, which he believed was the December 4, 2019 accident. The OWC discussed this and found this omission on the part of Claimant was not damning to his credibility, particularly as there was no dispute that Claimant reported that incident to his supervisors and was sent that same day to receive medical treatment as a result of the accident. Thus, the OWC found "Dr. Gunderson's ultimate impression was based on the discrepancies which the court has weighed and determined nonfatal to [Claimant's] claim." However, the OWC did note it would consider Dr. Gunderson's concerns that Claimant's complaints of lower back pain when doing straight leg raising gave rise in his view to possible

7

"symptom magnification." The OWC ultimately concluded Dr. Gunderson's concerns, based on an examination conducted approximately eighteen months after the accidents were not enough to outweigh the testimony of David Barcyzk, the chiropractor, and Dr. Heard who treated Claimant for several months following the accidents. Considering the vast discretion given the OWC, we cannot find manifest error in its factual determinations.

Defendants also attacked Claimant's credibility by presenting past injuries and accident incidents involving Claimant. These were brought out at trial below, to which Claimant explained they were years ago and involved only minor injuries or injuries to different parts of his body, the worst being a prior work injury to his wrist. The OWC was aware of these prior events and concluded they did not relate to the injuries suffered as a result of the October 2, 2019 and December 4, 2019 incidents. The OWC specifically referenced the fact that Claimant passed a Department of Transportation required physical the day prior to the October 2, 2019 accident.

Defendants also argue Claimant was unworthy of belief because he has a history of retaliatory compensation claims. Defendants noted Claimant brought a prior claim against a different employer, but there is no proof as to why the claim was brought and Claimant maintained the claim was reported prior to his termination in that case. Defendants also argued there was evidence that the claim against it in this case was nothing but a "revenge claim" brought by Claimant as a result of his Christmas Day termination. Defendants point to the testimony of Harold Bruno, an employee who supervised Claimant and tasked with informing Claimant on Christmas Day he was being fired. Mr. Bruno testified, after Claimant asked why Mr. Gaspard wasn't man enough to call him with the news he was being fired, stated "Yeah, I got something for him." While this comment clearly indicates Claimant's frustration with being fired on Christmas Day, it is pure speculation that this

comment indicates a plan to sue Defendants. The OWC heard these arguments by Defendants and found they were insufficient to declare Claimant's testimony was not worthy of belief.

The entirety of Defendants arguments are an attack on Claimant's credibility, which the OWC noted in its written reasons for judgment. As we noted previously, whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the OWC. After a review of the record, we cannot say the OWC manifestly erred in finding Claimant established an accident occurred on October 2, 2019 and December 4, 2019.

In their third assignment of error, Defendants maintain it was legal error for the trial court to hold that the submitted medical bills were to be paid without resorting to the fee schedule. The trial court awarded the full amount of the submitted medical bills over Defendants' objection that the bills should be reduced in accordance with the fee schedule. We find no merit in this argument.

This court in *Broussard v. Asco Venture Holdings*, 17-90, 17-91, pp. 3-4 (La. App. 3 Cir. 10/4/17), 229 So.3d 80, 84, addressed a similar argument by the employer, stating as follows:

> Defendants argue that Mr. Broussard's medical expenses should have been reduced to the amount recoverable under the workers' compensation fee schedule as mandated by La.R.S. 23:1203(B). However, when an employer denies a claim, the employer can be required to pay the actual medical expenses incurred by its employee and cannot avail itself of the fee schedule. *Louviere v. Food & Fun, Inc.*, 06-469 (La.App. 3 Cir. 10/11/06), 941 So.2d 155; *Smith v. Roy O. Martin Lumber Co.*, 03-1441 (La.App. 3 Cir. 4/14/04), 871 So.2d 661, *writ denied*, 04-1311 (La. 9/24/04), 882 So.2d 1144.
>
> This is because claimant is then forced to fund the costs of medical treatment himself and because, if the employer denies the claim from the outset, it has no right to pre-approve any treatment. La. R.S. 23:1142(E); *Smith v. Roy O. Martin Lumber Co.*, *supra*. Since Defendant has continuously denied its liability, it is liable for the actual medical expenses incurred by Plaintiff.

*Lemons v. Georgia Pac. Corp.*, 42,950, p.11 (La.App. 2 Cir. 2/13/08), 976 So.2d 307, 314, *writ denied*, 08-587, 08590 (La. 5/2/08), 979 So.2d 1288, 1289.

We find no error in the OWC's holding that Claimant is entitled to the full amount of his incurred medical expenses.

Defendants' final assignment of error asserts the OWC erred in awarding penalties and attorney fees in this matter. The OWC in its written reasons for judgment, specifically found "[c]onsidering the law and evidence, the court finds that the Defendants failed to reasonably controvert the claim."

Louisiana Revised Statutes 23:1201(F) provides for the assessment of penalties and attorney fees against an employer for failure to timely pay workers' compensation benefits. Penalties and attorney fees will not be assessed against an employer if the claim is reasonably controverted or nonpayment is due to circumstances beyond the employer's control. *Id*. To reasonably controvert a claim, an employer must be "engaged in a nonfrivolous legal dispute or [possess] factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890.

"The determination of whether an employer or insurer should be cast with penalties and attorney fees is a question of fact, subject to the manifest error or clearly wrong standard of review." *Evans v. Winn Lumber Co., LLC*, 20-28, p. 5 (La.App. 3 Cir. 10/28/20), 306 So.3d 525, 528 (citing *Authement v. Shappert Eng'g*, 02-1631 (La. 2/25/03), 840 So.2d 1181).

Defendants' primary argument is that they were never informed by Claimant of any December 4, 2019 accident and were only first aware of this allegation when the claim was filed. Claimant maintained he both informed and discussed the accident with Mr. Resignola and Mr. Gaspard. The OWC specifically found

Claimant's testimony in this area was credible. This finding obviously means the OWC found the testimony offered by Defendants that Claimant never reported any accident was not credible. Based on the record and the OWC's credibility determinations, we cannot conclude the OWC was manifestly erroneous in determining that Defendants did not reasonably controvert the claim.

## DECREE

For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. All costs of this appeal are assessed to Defendants-Appellants, CPG, Inc. and LUBA Workers' Compensation.

**AFFIRMED.**